IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LAQUAN DEMETRIUS COLLIER, #260292, ) | Civil Action No. 3: 11-590-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| CPT. TANCH; ) | |
| LT. HAROUFF; AND ) | |
| LT. LASLAY, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff, Lacquan Demetrius Collier, filed this action pursuant to 42 U.S.C. § 1983 ("§ 1983") on March 18, 2011.[1] He is an inmate at the Perry Correctional Institution ("PCI") of the South Carolina Department of Corrections ("SCDC"). Defendants Lt. Harouff ("Harouff") and Ofc. Laslay ("Laslay") are employees of SCDC, and Defendant Tinch[2] ("Tinch") is a former (retired) employee of SCDC. On July 26, 2011, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on July 27, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff did not file a specific response to Defendants' motion for summary judgment. On August 29, 2011, Plaintiff filed a motion to amend his complaint and to stay Defendants' motion for summary judgment. The undersigned denied Plaintiff's motions on September 6, 2011, and extended the time

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2]The correct spelling of the last name of the Defendant identified by Plaintiff as "Cpt. Tanch" is "Tinch." See Tinch Aff.

for Plaintiff to file a response to the Defendants' motion for summary judgment until October 3, 2011. Plaintiff again did not file a response to Defendants' motion for summary judgment. The undersigned issued an order on October 13, 2011, allowing Plaintiff an additional fifteen days to respond. On October 27, 2011, Plaintiff filed a response in which he states that he does not want his case "drop[ped.]" He claims he does not know anything about the law and asks that the Court wait until he gets the funds to hire an attorney. As of this date, Plaintiff has failed to file any meaningful response to Defendants' motion for summary judgment.[3]

**STANDARD OF REVIEW**

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't. of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County

---

[3] The undersigned has addressed Plaintiff's claims on the merits. Alternatively, it is recommended that Plaintiff's claims be dismissed pursuant to Rule 41(b), Fed. R. Civ. P., for failure to prosecute.

Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

## DISCUSSION

Plaintiff alleges that while housed in the D-dorm of the PCI Specialized Management Unit ("SMU"), Defendant Harouff began "sex playing [him] by mak[ing] gay jokes." Complaint at 3. He filed a grievance about Defendant Harouff's behavior. Id. Plaintiff claims that "[w]hen Lt. Harouff got word about the paper work he started to do more like [rubbing his] butt on [Plaintiff's] cell door." Id. at 3-4. After filing a second grievance and a request to the Warden, Plaintiff was moved to another dorm for three weeks. Id. at 4. He claims, however, that Defendant "Cpt. T[i]nch came around [Plaintiff's] cell [acting] like a lady looking up at [Plaintiff] then Lt. Laslay came over to B-dorm doing the same [thing]." Id. Plaintiff was subsequently transferred back to D-dorm. Id. On February 24 2011, Defendant Laslay visited Plaintiff's cell, allegedly blowing kisses and acting "like a girl." Id. Plaintiff seeks transfer to a prison far from PCI and closer to his family. Id. at 7.

Plaintiff appears to allege that he has been transferred to different dorms within the Special Management Unit ("SMU") of PCI in retaliation for filing grievances concerning alleged harassment by Defendants. He may be asserting a First Amendment claim.[4] Defendants contend that they are

---

[4]On April 18, 2011, the undersigned recommended that this action be dismissed without prejudice because Defendants' alleged verbal abuse and harassment did not rise to the level of a constitutional violation (Eighth Amendment), and Plaintiff was not entitled to the relief he sought (transfer to another institution) because he had no constitutional right to be housed in a particular institution, custody level, or particular portion of a unit of a correctional institution. The Honorable Cameron McGowan Currie, United States District Judge, declined to adopt the report and
(continued...)

entitled to summary judgment because: (1) the matters asserted by Plaintiff do not fall within the scope of § 1983; (2) Defendants are entitled to Eleventh Amendment immunity; (3) Defendants, while acting in their official capacity, are not "persons" under § 1983; (4) Defendants are entitled to Eleventh Amendment immunity; (5) Plaintiff fails to show any physical injury; and (6) Plaintiff's action is frivolous.[5]

    1.    <u>First Amendment Claim</u>[6]

Plaintiff may be attempting to assert a First Amendment claim that he was transferred between dorms in retaliation for filing a grievance (or grievances). Defendants argue that Plaintiff fails to set forth any evidence that he has been transferred from his dorm for inappropriate reasons.

Although the Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment,[7] other circuits have held that

---

[4](...continued)
recommendation. In her Order, Judge Currie noted that Plaintiff did not indicate which provision of the Constitution he contends Defendants violated; indicated that because Plaintiff's alleged conduct contained no element of actual assault or exposure, he had not stated a claim under either the Fourth or Eighth Amendment; and noted that Plaintiff had no protected constitutional right to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a constitutional institution. Judge Currie found, however, that Plaintiff may have stated a viable claim under the First Amendment as to his claims that he was transferred between various dorms at PCI for having filed a grievance. See Doc. 11.

[5]Defendants also requests that the Court order, pursuant to S.C. Code Ann. § 24-27-200, that Plaintiff forfeit all or part of his earned work, education, or good conduct credits in an amount to be determined by SCDC because he has filed a frivolous claim. The undersigned declines to recommend a finding that this action is frivolous.

[6]To the extent that any claim concerning verbal abuse, invasion of privacy, or a request for a transfer is still before the Court, the undersigned recommends that Defendants' motion for summary judgment be granted as to these claims for the reasons cited in the undersigned's April 2011 report and recommendation. See Doc. 8.

[7]The Fourth Circuit, in an unpublished opinion, recognized that a prisoner's claim of transfer
(continued...)

prison officials may not retaliate against a prisoner for filing grievances. See, e.g., Hill v. Lapin, 630 F.3d 468, 472 (6th Cir. 2010)(recognizing a prisoner's "undisputed First Amendment right to file grievances against prison officials on his own behalf"); Gee v. Pacheco, 627 F.3d 1178, 1189 (10th Cir. 2010)(recognizing filing of grievance as a protected First Amendment right); Haynes v. Stephenson, 588 F.3d 1152, 1155–56 (8th Cir.2009)("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); Bibbs v. Early, 541 F.3d 267, 272 (5th Cir.2008)(holding plaintiff stated a cognizable claim where prison officials allegedly subjected him to sub-freezing temperatures for four consecutive nights in retaliation for filing grievances); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006)("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."); Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005)(holding plaintiff stated a claim where he alleged prison officials destroyed property, threatened transfer, and assaulted him in retaliation for filing grievance and lawsuit); Gill v. Pdilypchak, 389 F.3d 379, 384 (2d Cir. 2004)(holding plaintiff stated a claim where prison officials allegedly issued false misbehavior reports and sentenced him to three weeks in keeplock in retaliation for using grievance system).

To establish a First Amendment § 1983 retaliation claim, a plaintiff must show that: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action. Suarez Corp. v. McGraw, 202 F.3d 676,

---

[7](...continued)
in retaliation for filing grievances implicated the First Amendment rights of free speech and to seek redress of grievances. Gullet v. Wilt, 869 F.2d 593, 1989 WL 14614, at *2 (4th Cir. 1989).

685–86 (4th Cir. 2000)(citations omitted). For purposes of summary judgment, the undersigned assumes that Plaintiff's use of the grievance process was protected under the First Amendment.

As to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)(internal quotation marks and citations omitted). Generally, transfer from one dorm of SMU to another would not be an adverse action upon which a retaliation claim may be based. See Smith v. Yarrow, 78 F. A'ppx 529, 543 (6th Cir. 2003)(unpublished)("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.")(internal quotation marks and citations omitted)). A prison transfer or threat of such may be an adverse action, however, if it would "result in foreseeable, negative consequences to the particular prisoner." Hill, 630 F.3d at 474–75 (holding that threat to transfer plaintiff to the lock-down unit at another prison constitutes an adverse action because the transfer would foreseeably lead to a living environment with more restrictions and fewer privileges than in the prison's general population); see also Gee, 627 F.3d at 1189 (recognizing that transfer to out-of-state super-max prison would chill a person of ordinary firmness from continuing to engage in activity protected by the First Amendment). Plaintiff only claims that the transfers subjected him to verbal threats and harassment, which may be reprehensible, but fails to rise to the level of a constitution violation. See Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004)(holding that the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment); Adkins v. Rodriguez, 59 F.3d 1034 (10th Cir. 1995)(verbal sexual harassment by jailer, while outrageous, does not amount to a violation of the inmate's Eighth Amendment rights);

6

see also Allen v. Wine, No. 07-2945, 2008 WL 4691779 at *5 (7th Cir. Oct. 8, 2008)(finding "sexual harassment consisting of words and gestures, rather than any physical abuse" insufficient to state a cognizable Eighth Amendment claim).

Even if Defendants' actions or inactions rise to the level of an adverse action, Plaintiff fails to show a causal connection between the filing of a grievance and a transfer. Defendants state that they do not have authority to place an inmate in SMU.[8] They further state that they have no involvement in the grievance process and generally would not be aware that an inmate has filed a grievance, nor do they have any specific recollection of any grievance filed by Plaintiff. Defendants also provide that inmates may be transferred from one SMU dorm to another for a variety of reasons, including that an inmate is creating particular problems with the staff in one dorm or to make space because another inmate needs to be moved. See Harouff, Tinch, and Laslay Affs. Harouff states that Plaintiff was moved back to D-Dorm because he was making inappropriate comments and exhibiting inappropriate behavior toward a particular female officer working in that dorm. Harouff Aff. Laslay states that Plaintiff was moved on one occasion because he was making inappropriate comments to, and exhibiting inappropriate behavior toward, a female officer and Plaintiff was moved to ensure the safety and security of the institution due to Plaintiff's inappropriate actions. Laslay Aff.

Further, simply alleging retaliation is not sufficient to state a claim for relief. A plaintiff must come forward with specific evidence "that but for the retaliatory motive, the complained of incident

---

[8]Plaintiff does not appear to allege that he was placed in SMU based on the filing of a grievance, rather that he was transferred between dorms in SMU. Even if he has alleged a claim for retaliatory placement in SMU, he fails to show a causal connection. Felicia Ogunsile, the Classification Case Manger at PCI, provides a detailed history of Plaintiff's placements in SMU after being charged, and/or found guilty of various disciplinary infractions including Failing to Obey an Order, Exhibitionism and Public Masturbation, Soliciting Improper Relationships, and Threatening to Inflict Harm. Ogunsile Aff.

7

... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995). Complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). Here, the only evidence Plaintiff offers of retaliation is that he filed a grievance and was later transferred. Mere temporal proximity between an inmate's protected activity and the allegedly retaliatory official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993).

    2.    Emotional Distress

Defendants contend that this action should be dismissed pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), because Plaintiff has failed to point to any physical injury he suffered as a result of Defendants' actions or inactions. Although Plaintiff may be attempting to allege that he has suffered emotional distress from Defendants' actions or inactions, there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[9]

---

[9]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional (continued...)

42 U.S.C. § 1997e(e).

    3.    <u>Immunity</u>

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against

---

[9](...continued)
injury under the PLRA), <u>aff'd</u>, 133 F.3d 459 (7th Cir. 1997).

the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

**CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 20) be **granted**.

                                            Joseph R. McCrorey
                                            United States Magistrate Judge

January 23, 2012
Columbia, South Carolina

    **The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).